Titus agt. Relyea.

<hr />

## SUPREME COURT.

### WILLIAM TITUS agt. PETER RELYEA.

In the publication of the opinion of the court in this case (16 *How.* 371), holding that in cases of publication the name of the *state* should appear in the summons or complaint, and that the *time and place* of filing the complaint should be stated in the body of the summons as published, &c., it does not appear that Mr. Justice ROSEKRANS *dissented.*

In order, therefore, to place the learned justice right on the record, his dissent is now published in his own words, the authenticity of which, on perusal, will not be doubted. Under the decision of the court of appeals on this question,

in *Cook* agt. *Esleeck, ante, page* 134, the following may perhaps properly be considered a prevailing opinion.

*General Term, Fourth District.*

ROSEKRANS, Justice, (dissenting). The objection, that the summons does not state where the complaint "is or will be filed," is not well taken. Section 130 of the Code only requires that the summons shall state where the complaint "is or will be filed," in cases where the *complaint is not served with the summons.* This language refers to any mode of service allowed by law, whether personally or by publication. It is not confined to cases of personal service. In this case, the order of the county judge required that a copy of the summons and complaint should be deposited in the post-office, directed to the defendant, at Plainfield, New-Jersey, his place of residence, and the proof of service showed that this was done. This, in connection with the publication of the summons, is one of the modes of service authorized by law. (*Code,* § 135.) But even if this is not an answer to the objection, it would be hypercritical to hold that the statement in the summons, " *that the complaint will be filed with the clerk of Montgomery county,*" is not a compliance with the requirements of the 130th section of the Code. The court will take judicial notice of the fact, and the parties are presumed to know that the clerk of a county is an officer who keeps a public office, in which records and other papers in actions are filed. Papers filed with a clerk are presumed to be filed in his office, and a statement that papers *will be filed with the clerk* is equivalent to stating that they will *be filed in his office.* Such is the language of the Code itself, which is presumed to be understood by persons of ordinary understanding. Section 416 says, "the summons and the several pleadings in an action *shall be filed with the clerk,*" &c. (*Section* 246, *sub.* 1.) "In any action arising on contract for the recovery of money only, the plaintiff may *file with the clerk.*" (*Section* 282.) "On filing a judgment roll, &c., it may be *docketed with the clerk* of the county where it is rendered, and in any other county, upon the *filing with the clerk* thereof a transcript," &c. (*Section* 384.) The statement (on confes-

Titus agt. Relyea.

sion of judgment) "*may be filed with a county clerk*, or a clerk of the superior court." Notice of his proceedings "the plaintiff *may file with the clerk*," &c. (*Section* 132.)

No one except the defendant, so far as has come to the knowledge of this court, ever had any doubt about the meaning of this expression. It is sufficient to answer the requirement of section 130. Nor was the plaintiff required to state, in his summons, in what state the county of Montgomery was, with the clerk of which the complaint was to be filed. The Code no where requires it. Unless the defendant has been devoting special attention to the study of geography, since the judgment in this action was rendered, he knew, as well before the suit was commenced as after judgment, the fact affirmed by his counsel, that "*there are fifteen states in the United States, in which there is a county named Montgomery.*" Unless the court takes judicial notice of the fact, it cannot avail the defendant, as he has furnished no information, in the papers for this motion, that it is a fact. The law presumes that the publication of the summons in two newspapers and the post mark on the letter inclosing the summons and complaint in this state, will give the defendant information as to the state in which the proceedings are being taken, or at all events will furnish him sufficient information to put him upon inquiry or an examination of his geography and atlas, and thus discover in which of the states he is sued. And if such search after this knowledge does not result successfully, I know of no other mode of the defendant's overcoming his difficulties, under the present state of the law, except by taking up his course of travel into "*each of the fifteen states in which there is a county named Montgomery*," with the risk of not reaching the right one, until he has visited the fourteen in which he has not been sued. Perhaps this is the reason for the provision allowing the defendant seven years, after the rendition of the judgment, to come in and defend, a period of sufficient length to allow the defendant to perform his journey on foot. The attorney for the defendant has not informed the court whether each of the " fifteen states in which there is a county named Montgomery," contains a " village or

Canajoharie," which is the place where the summons in this case informs the defendant that the attorneys for the plaintiff keep their office, and where " *in the county of Montgomery*" the defendant must serve his answer.   If such should be the case, the difficulties of the defendant's pursuit of knowledge would be greatly enhanced, and the Code should be amended by allowing the defendant fourteen years after judgment to come in and defend, instead of seven.   Such a case did not probably occur to the codifiers or the legislature, or they would have made suitable provision for it.

We think, too, that the object of the 135th section of the Code is answered by the statement subjoined to the summons, that "the complaint in said action was filed in the clerk's office of the county of Montgomery, on the 1st day of October, 1857."   True, the letter of the statute is, that "the *summons, as published, must state the time and place of filing the complaint.*" (*Code, section* 135, *last clause.*)   The spirit and intent of the act, however, are to be regarded rather than its letter, and, if the object of the section is obtained, its letter may be disregarded in slight particulars.   *Qui hæret in litera hæret in cortice*—The letter killeth, but the spirit maketh alive.

But the whole notice published may, in fact, be regarded as *the summons.*   The first words, " Cook & Morrill, plaintiff's attorneys," preceding the words which are called *a notice*, may be regarded as surplusage ; they are clearly unnecessary, and surplusage does not vitiate.   The only object of retaining them is, that the *letter* of the order of the judge for publication, which requires "the annexed summons" to be published, may be complied with.   We think, however, that the order would have been legally and sufficiently complied with, even if the names of the attorneys had been erased from the end of the summons annexed to the order, and subscribed after the statement of the time and place where the complaint was filed.

The affidavit, on which the order for publication was granted, was sufficient to authorize the making of the order.   It states "that the defendant is a non-resident of this state, that he resided in Plainfield, New-Jersey, and that he cannot be found

in this state after due diligence." The only objection to the affidavit is, that it does not state what diligence had been used. The Code requires that if the fact, that the defendant cannot be found within the state after due diligence, appears to the satisfaction of the court or judge, the court or judge may grant the order for service by publication, The fact of non-residence of the defendant tends to prove the inability to find him in the state. (5 *How. Pr. Rep.* 3, 4; 3 *How. Pr. Rep.* 416.)

It is, at least, sufficient to confer jurisdiction upon the officer, especially in connection with the other statement, that the defendant cannot be found within the state. The language of this statute is different from that under which attachments are issued by justices of the peace. (2 *R. S. 4th ed.* 431, § 26; *ib.* 461, § 212.) These latter require that *the facts and circumstances* to establish the grounds for the application shall be proved to the satisfaction of the justice, but the 135th section of the Code does not require such statement. It only requires that the fact of inability to find the defendant, after due diligence, shall appear to the satisfaction of the justice, and we think that proof of the defendant's non-residence, with a positive statement that he cannot be found, is sufficient, if the order is granted. The granting of the order is evidence that the judge is satisfied on that subject. It was so held by BARCULO, J., in *Roche* agt. *Ward* (7 *How. Pr. R.* 416), which was a direct proceeding to vacate the order. Besides, the order of the judge proves itself, and its recitals (13 *How. Pr. R.* 43, 45), and that states, that it appeared to his satisfaction that the defendant could not, after due diligence, be found in this state. The Code does not require that the affidavit, on which the order of publication is granted, should appear in the judgment roll, and, in the absence of proof that the papers presented are those upon which the order was granted, the court should presume that a sufficient affidavit was presented to the judge to justify the granting of the order. The court is not informed as to what papers were presented to the judge, except as the inference is drawn from the affidavit unnecessarily annexed to the judgment roll. It was incumbent upon the

defendant, if he sought to avail himself of such an objection, to show affirmatively that the affidavit annexed to the judgment roll was the only one presented to the judge.

The Code does not require that the complaint shall be filed before the order for publication is made, but only that it shall be filed before publication. There is no force in the objection, that the county where the trial is to be had can only be determined so far as regards the granting of the order by the complaint. An affidavit by the plaintiff, that the trial is to be had in a particular county, will be sufficient for the purpose of conferring jurisdiction upon the county judge of the county named, to grant an order for publication.

Nor does it appear that the direction of the order, that a copy of the summons and complaint be forthwith deposited in the post-office, was not complied with. The order is dated Sept. 30, 1857. The court is not informed by the defendant's papers where the county judge resided, nor at what time of day on the 30th September the order was granted; nor, if transmitted by mail by the county judge to the plaintiff's attorneys, at what time it reached them, nor that they did not forthwith, or within twenty-four hours after its receipt, deposit a copy of the summons and complaint in the post-office as required. The defendant should have shown some facts from which it would appear that the terms of the order were not complied with, instead of leaving the inference that it was not complied with to be drawn from the date of the order and the time of mailing the summons and complaint. The deposit of the summons and complaint in the post-office should be deemed a compliance with the order and the statute, if made with reasonable dispatch after the order has reached the hands of the attorney who obtains it, allowing the time for the transmission of the order by the regular course of the mail, where the officer does not reside, or the court which grants the order does not sit, in the same place where the plaintiff's attorney resides, and time to make copy of summons and complaint after the attorney receives the order from the judge or the court. The lapse of two days, between the date of the order

and the depositing of the summons and complaint in the post office, in the absence of all proof showing laches, is not sufficient to sustain the objection that they were not mailed as required by the order.

We think, too, that the proof of publication in the *Albany Atlas and Argus* was sufficient. The order required that the summons should be published in a newspaper, printed and published in the city of Albany, called the *Albany Atlas and Argus*. The affidavit of publication was taken in the city and county of Albany. The deponent swore that he was *foreman in the office of the Albany Atlas and Argus. That the summons was printed* (and this implies that it was in a paper), *that it was printed and published in said Albany Atlas and Argus* (and this imports that the paper in which it was printed was called the *Albany Atlas and Argus*), *and that it was regularly published once in each week for six weeks successively* (and this imports that the *Albany Atlas and Argus* was a paper printed and published regularly and weekly). Its name and the place of its office import that it was a paper printed and published in the city of Albany. The court will take judicial notice of the known laws of business, and will infer that a paper which is regularly printed and published weekly, and in which legal notices are published, is a newspaper, and that if the foreman in its office resides in the city of Albany, and its name is the *Albany Atlas and Argus*, that it is published in the city of Albany. But the proof of service is not a jurisdictional matter, but merely a matter of practice. The defect in the affidavit of publication is merely an irregularity, and this is not one of the defects pointed out in the notice of motion. Besides, it could be amended if amendment was necessary. We do not deem it necessary.

The complaint sufficiently specifies the name of the court in which the action is brought, and the county in which the trial was to be had. We have already said all that is deemed necessary, to answer the latter part of the objection in relation to the fifteen *states in each of which there is a county named Montgomery.* The plaintiff's counsel suggests, but furnishes

no proof, that eleven of the "fifteen states having a county named Montgomery" have a *supreme court*. If such is the fact, (and the defendant should have given some proof of it, if he desired to base an argument upon it), we think it is unnecessary to designate the court as being in any particular state, or to describe the state by metes and bounds. The law presumes that suitors in court know something.

There is no rule of practice, nor of law, which requires that the record of judgment should show that the plaintiff, or his agent, was examined as to payments made upon the demand in suit. It is not to be inferred that the court, before which the judgment was obtained, omitted to take the oath of the plaintiff, which the 246th section of the Code requires.

These reasons are sufficient to sustain the order of the special term, without regarding the question of laches. On that question it is only necessary to say, that the defendant admits that, about the 1st January, 1858, he heard that the action was commenced, but did not hear the particulars thereof. He does not deny that he heard at that time in what court it was commenced, or in what county the papers were filed. If he did not, he is to be deemed peculiarly fortunate in having ascertained, within a month, *in which of the eleven states of the fifteen having a county named Montgomery, in which there was a supreme court*, the records of judgment in the case were filed. It is probable that he heard of the judgment about the 1st January, 1858. To get relief from any technical irregularities in the proceeding, where the party has no merits, he must move with more expedition than this defendant did.

The order of special term should be affirmed with costs.